# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ELK VALLEY RANCHERIA,
CALIFORNIA,

    Plaintiff,

v.

ELLIS PARTNERS, INC. , et al.,

    Defendants.

Case No. 2:09-CV-00621-KJD-GWF

**ORDER**

    Currently pending before the Court is Third Party Plaintiff Ellis Gaming & Entertainment, LLC, Ellis Partners, LLC, LLC, R. Shawn Ellis, Ellis Partners, Inc.'s (referred to collectively as "Ellis" or Defendants") Motion for Hearing (#18), and Third Party Defendants Kathleen M. Innaurato ("Innurato"), and Gerry Nailon's ("Nailon") Motion for Leave to File Supplemental Brief (#20). Also pending before the Court is Plaintiff Elk Valley Rancheria, California's ("Elk Valley") Motion for Partial Summary Judgment (#21). Ellis Defendants filed a Response in Opposition (#23), to which Elk Valley filed a Reply (#26).

    The Motions currently before the Court arise from an action brought in state court by Plaintiff Elk Valley Rancheria, a federally recognized Indian tribe located in Crescent City, County of Del Norte, California, on October 28, 2008, against Defendants EGE, Ellis Partners, Inc., Ellis Partners,

LLC, and Mr. Ellis, alleging seven claims for relief for: (1) breach of contract; (2) breach of contract as to guaranty; (3) fraud; (4) negligent misrepresentation; (5) constructive fraud; (6) conversion; and (7) unjust enrichment. Generally, the claims arise from a contractual relationship Plaintiffs made with Mr. Ellis' former company, Ellis Gaming, LLC, to provide gaming consulting services and later, a management contract with an affiliated company, Ellis Gaming Elk Valley Management, LLC, ("EGEVM") to manage the Plaintiff's tribal government gaming facility, the Elk Valley Casino, pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, and other investments between the parties. The Complaint seeks recovery of payment allegedly owed by Defendants under three promissory notes made by the tribe to Ellis entities, and for various alleged tort claims related to the Ellis parties' conduct inducing Plaintiff's investment and other related actions.

Specifically, the Complaint alleges that Mr. Ellis approached Plaintiff's representative in November 2006, and requested a loan to help provide financial support for Mr. Ellis' new company, EGE. Mr. Ellis proposed that the loan be made to Ellis Partners, LLC, and that he would personally guaranty the loan which would be repaid in January 2008, with interest at a rate of 8.25%. As inducement for the loan, Mr. Ellis eventually offered Plaintiff a total of eight percent of Ellis Partners, LLC, to be divided as a 4% immediate gift to the Plaintiff, and 4% upon conversion to an equity interest in Ellis Partners, LLC. On November 8, 2006, Plaintiff and Defendant Ellis Partners, LLC entered into a promissory note in the mount of $250,000.00 ("Promissory Note I") which was personally guaranteed by Mr. Ellis. Subsequently, Mr. Ellis requested further loans from Plaintiff, and as a result Plaintiff and Ellis Partners, LLC entered into a second promissory note on December 14, 2006, in the amount of $115,000.00 ("Promissory Note II") and a third promissory note on February 28, 2007 in the amount of $115,000.00 ("Promissory Note III") both of which, Mr. Ellis personally guaranteed.

2

Promissory Note I anticipated a 2% equity interest in Ellis Partners, LLC to be valued at $250,000.00. Promissory Notes II and III provided that a 1% equity interest in Ellis Partners, LLC was valued at $125,000.00. The three Promissory Notes are referred to herein as "Loans".

Upon Plaintiff's inquiry to Mr. Ellis regarding confirmation of its interest in Ellis Partners, LLC, Mr. Ellis repeatedly represented that the Loans were secure and stable and would either be repaid or converted into a feasible, economically viable equity interest in Ellis Partners, LLC because the various ownership interests held by Ellis Partners, LLC would serve as the source of security for repayment. Additionally, Mr. Ellis represented to Plaintiff that upon conversion to an equity interest, Plaintiff would own an interest in Ellis Las Vegas—a casino and resort project to be located in Las Vegas, Nevada. Ellis represented that the investment in the Ellis Las Vegas casino and resort project was economically secure because Plaintiff's funds and those of other investing tribes would be used to purchase the land for the project, that the zoning and related licenses and permits were in progress; that financing was imminent either from other tribes or from sources in Dubai, and that the value of the land had increased by 25% in three weeks. Additionally, Mr. Ellis represented that revenue from two Indian gaming management companies owned by Ellis Partners, LLC would secure the Loans and ensure repayment.

Upon further inquiries by Plaintiff as to its ownership interests in EGE, Mr. Ellis replied that Ellis Partners, LLC owned majority interests in EGE; Ellis Development, LLC; Ellis Las Vegas, Inc.; and Ellis Las Vegas Management, LLC. Additionally, in response to Plaintiff's query regarding EGE's financial capability to operate EGEVM, Mr. Ellis responded that EGE's two active management agreements were generating extensive revenue for the company, that the Elk Valley Casino earnings were increasing, and that a forthcoming consulting contract and other projects were expected to generate considerable revenue. Mr. Ellis made representations to Plaintiff's representatives that other tribes would also contribute extensive amounts for equity interests in Ellis Las Vegas, Inc., for the Ellis Las Vegas casino and resort project. As a result of these alleged

3

investments and the alleged increase of property value, Mr. Ellis represented to Plaintiff that its equity interest upon conversion would be approximately $3,500,000.00.

Plaintiff avers that from the date of entry into Promissory Note I, and repeatedly thereafter, Plaintiff requested production of evidence of its membership interest in Ellis Partners, LLC, and repeatedly, Mr. Ellis and his agents failed or refused to provide the requested information or documents pending review and approval by the National Indian Gaming Commission ("NIGC"). On several occasions, Mr. Ellis offered to pay for the costs of the NIGC background investigations for Plaintiff or Plaintiff's holding company.

In December 2007, Plaintiff informed Mr. Ellis that it wanted to convert the Loans into an equity interest in Ellis Partners, LLC. In a letter dated March 25, 2008, Mr. Ellis indicated that "the Notes are to convert upon the NGIC approving the Tribe's ownership in Ellis Partners." (Compl. ¶ 52.) On or about April 7, 2008, Ellis Partners, LLC was converted into Ellis Partners, Inc., a Delaware Corporation. At or around this time, Plaintiff learned that EGE's gaming management contracts with other tribes were not generating revenues as expected, and/or had been terminated. In May 2008, Plaintiff terminated its management contract with Ellis Gaming Elk Valley Management, LLC, due to its "failure to comply with licensing requirements and inadequate performance." (Compl. ¶¶55–58.) In June 2008, Mr. Ellis represented to Plaintiff's representatives that funding for the Ellis Las Vegas casino and resort project was imminent and would be available by the end of the month. On September 23, 2008, Mr. Ellis and Ellis Partners Inc.'s legal counsel represented that $200,000,000.00 in funding from Dubai for the Ellis Las Vegas casino and resort project would be available by September 30. In October however, Mr. Ellis refused to provide requested documentation or status of the transfer of the funds from Dubai.

Promissory Notes I and II matured and became due and payable on January 1, 2008. Promissory Note III matured and became due and payable on March 1, 2008. To date, the entire outstanding principal balance of each of the Loans, and any accrued and unpaid interest have not

been paid. Additionally, contrary to Mr. Ellis's representations, several of the Indian tribes Ellis had represented would invest in and/or purchase land in the Las Vegas casino project did not do so, and the Ellis Las Vegas casino and resort project property was never purchased. Also contrary to Mr. Ellis' representations, the management and consulting contracts that Mr. Ellis had represented would garner revenue for Ellis Partners, LLC did not do so or were terminated. Additionally, Mr. Ellis has denied Plaintiff its gratuitous membership interest in Ellis Partners, LLC and shares in Ellis Partners, Inc., and unilaterally rescinded Plaintiff's gratuitous 4% membership/ownership in Ellis Partners, LLC and Ellis Partners, Inc. As of the date of Plaintiff's filing of the Complaint, the Loans were not secure, Ellis had not repaid the Loans, and Plaintiff's purported membership/ownership interest in Ellis Partners, LLC and Ellis Partners, Inc. had not increased in value.

Plaintiff's instant Motion seeks partial summary judgment on its claims for breach of contract and breach of guarantee. Defendants, in opposition, argue that the Motion should be denied (1) because it is premature, (2) because genuine issues of material fact remain, (3) because granting the Motion would be prejudicial and deprive Defendants of due process, and (4) because denying the Motion at ths time will not prejudice the Plaintiff, who may refile the Motion after further discovery. The Court doe not agree.

**II. Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

1. All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the nonmoving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

**III. Analysis**

As stated above, Plaintiff seeks that the Court grant summary judgment on the its first and second claims for relief for breach of contract and breach of contract as to guaranty.

**A. Breach of Contract**

To state a claim for breach of contract in Nevada, a Plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages.  See Calloway v. City of Reno, 1993 P.2d 1259, 1263 (2000).

6

Under Nevada contract theory, "[t]he question of the interpretation of a contract when the facts are not in dispute is a question of law." Grand Hotel Gift Shop v. Granite St. Ins., 839 P.2d 599, 602 (Nev. 1992). There are two primary doctrines of contractual interpretation: (1) the court shall effectuate the intent of the parties determined in the light of the surrounding circumstances if not clear from the contract itself; and (2) ambiguities are to be construed against the party who drafted the agreement. See Musser v. Bank of America, 964 P.2d 51, 52 (Nev. 1998). However, "[i]n interpreting a contract . . . a contract that is clear on its face from the written language . . . should be enforced as written." Canfora v. Coast Hotels & Casinos, Inc., 121 P.3d 599, 603 (Nev. 2005). Furthermore, "[e]very word must be given effect if at all possible." Id. at 54, (quoting Royal Indem. Co. v. Special Serv., 413 P.2d 500, 502 (Nev. 1966)).

Here, there is no genuine issue of material fact concerning the validity of the subject promissory notes or the unconditional guarantee agreement. Defendants have alleged no mutual mistake in wording or fraud by Plaintiff regarding the notes and agreements. Moreover, an examination of the Promissory Notes and the Guaranty Agreements contained in the Promissory Notes demonstrates no ambiguity. Defendants' Response makes no allegation that the agreements are invalid that they were not entered into voluntarily. Rather, Defendants aver that Elk Valley exercised its option to convert the loans into an equity interest, and that this action somehow triggered conditions precedent that are not dilineated within the four corners of the agreements. Specifically, Defendants aver that upon Elk Valley's notice that it desired to convert the loans, Elk Valley became obligated to apply for NIGC approval. The Court does not agree.

**B. Language of the Promissory Notes**

Defendants argue that Elk Valley "irrevocably elected to convert the Notes to equity interests" and therefore, "had no legal right to cancel or rescind the conversion." (#23 at 8.) Defendants claim Elk Valley "acted in bad faith and breached the agreement by intentionally attempting, in bad faith, to void their election" to apply for and obtain NIGC approval. (#23 at 8–9.)

7

Moreover, Defendants aver that "[t]he Tribe had a duty to apply for and obtain that approval," and "because the Tribe [] committed to convert, it was obligated to pursue NIGC approval. (Id.)  This argument however is in direct contradiction to the express terms of the agreements.

Section One of Promissory Note I provides that in the event either the Lender (Elk Valley) or the Borrower (Ellis), at their option, elected to convert the amount of the loan to an equity interest in the Borrower, the following conditions precedent were required to be satisfied prior to satisfaction of conversion to an equity interest: (1) NIGC approval of Plaintiff's membership in Borrower; (2) After NIGC approval, Plaintiff or Borrower would give written notice that they were converting the Note into a membership interest in the Borrower; (3) Upon surrender of the Note following satisfaction of conditions 1 and 2, above, Plaintiff's execution of an agreement would be bound by an amended operating agreement of the Borrower in a form satisfactory to the NIGC, Borrower, and Borrower's members; (4) Delivery of the Note to Borrower and marking of it as "paid in full"; and (5) delivery by Borrower of an amended operating agreement to lender for execution. (See #21 Ex.1: A, B, and C.)

Each agreements' language uses the conditional term "if" when setting forth the qualifications for conversion of the loan amount into an equitable interest.  Specifically, the agreements state "**if** Lender or the members of Lender are approved by the NIGC to become members of Borrower, either Lender or Borrower shall have the right at any time prior to maturity, at their option, to convert the principal amount of this Note into fully paid and non-assessable membership interests in the borrower," and "**[i]f** Lender applies for and does not receive NIGC approval, Lender shall not be entitled to any membership interest in the Borrower." (Id.)(Emphasis added).

Defendant seeks that the Court deny summary judgement on the contractual issues, averring that a determination regarding this issue is premature, because discovery has not been completed. As stated above however, a review of the Promissory Notes, and the personal guarantees contained

8

therein reveal no ambiguity. Plaintiff has alleged no facts that demonstrate a genuine factual issue exists that preclude a finding of breach. The Court finds untenable Defendant's position that Plaintiff acted in bad faith, or was obligated to apply for NIGC approval under the terms of the promissory notes. Postponing a ruling on this issue to allow further discovery will be unavailing, as Defendant's position is insupportable given the plain language of the agreements.

### IV. Conclusion

Acordingly, **IT IS HEREBY ORDERED** that Plaintiff Elk Valley Rancheria, California's Motion for Partial Summary Judgment (#21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Ellis Gaming & Entertainment, LLC, Ellis Partners, LLC, LLC, R. Shawn Ellis, Ellis Partners, Inc's Motion for Hearing (#18) is **DENIED** as moot per the Court's Order (#27) of March 24, 2010.

**IT IS FURTHER ORDERED** that Third Party Defendants' Kathleen M. Innaurato and Gerry Nailon's Motion for Leave to File Supplemental Brief (#20) is **DENIED** as moot per the Court's Order (#27) of March 24, 2010.

DATED this 29th day of September 2010.

_____
Kent J. Dawson
United States District Judge